IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

_____

| | | |
|---|---|---|
| JAMES EDWARD GARY, JR., #222 516 | * | |
| Petitioner, | * | |
| v. | * | 3:07-CV-1074-WKW (WO) |
| KENNY JONES, WARDEN, *et al.*, | * | |
| Respondents. | * | |

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION AND PROCEDURAL HISTORY**

This cause is before the court on a 28 U.S.C. § 2254 petition for habeas corpus relief filed on November 29, 2007 by Petitioner James Gary, Jr. Petitioner challenges the conviction for capital murder[1] entered against him by the Circuit Court for Lee County, Alabama, on August 4, 2005.  The trial court sentenced Petitioner on October 12, 2005 to life in prison without the possibility of parole.  (*Doc. No. 9, Exh. 1C*.)

Petitioner filed a direct appeal of his conviction.  Petitioner maintained on appeal that: (1) the trial court committed reversible error when it denied his motion to suppress his statements given to law enforcement officials due to his request for an attorney during

---

[1]A jury found Petitioner guilty of murder during the course of a first degree robbery in violation of Ala. Code § 13A-5-40(a)(2).  (*Doc. No. 9, Exh. 4.*)

custodial questioning; and (2) the trial court committed reversible error by denying his motion to suppress his statement given to law enforcement officials due to their inducements of hope of a lighter sentence. The Alabama Court of Criminal Appeals affirmed Petitioner's conviction on April 20, 2007 and overruled his application for rehearing on May 11, 2007. The Supreme Court of Alabama denied Petitioner's petition for writ of certiorari and issued a certificate of judgment on July 13, 2007. (*Doc. No. 9, Exhs. 2-9.*)

In the instant § 2254 petition Petitioner claims that during a post-waiver custodial interrogation he made an unequivocal request for an attorney and, therefore, questioning should have ceased and subsequent incriminating statements should have been suppressed. (*Doc. No. 1.*)

Respondents filed an answer in which they argue that Petitioner's claim was properly adjudicated on the merits by the state courts. (*Doc. No. 9.*)   *See Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). Upon review of the § 2254 petition, the answer of Respondents, and Petitioner's response thereto, the court concludes that no evidentiary hearing is required and that the petition is due to be denied in accordance with the provisions of Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

## II.  THE FACTS

On direct appeal the Alabama Court of Criminal Appeals summarized the facts of Petitioner's case as follows:

... The bodies of Thurman Ratliff and his wife, Katherine, were discovered in their Opelika home by their adult daughter, Katrina Sue Ratliff, early in the afternoon of January 30, 2002. Thurman Ratliff was discovered lying face down on the den floor. He had been shot in the hand, the lower back, and in the back of the head. Katherine Ratliff was discovered lying face down in a bedroom. She had been shot in the shoulder, once in the leg, once in the left foot, and three times in the back of the head. The deaths were determined to be homicide by multiple gunshot wounds.

The investigation disclosed that the back door into the residence was the point of entry and that the door had clearly been forced open. The interior of the Ratliff's home and the attic had been rifled through and the return for the air conditioner had been "ripped open." (R. 1657.) Based on the appearance of the home, one officer opined that "somebody was looking for something." R. 1652.) It was concluded, based on the investigation, that searching for "money was the motive for entering the home." (R. 1758.) An unopened safe containing $87,000.00 in cash was found hidden in the bathroom. (R. 1692.) Shell casings and the bullets were retrieved from the crime scene.

The investigation of these murders led police to the home of Katrina Jackson, the mother of [Petitioner's] two children. Jackson testified that [Petitioner] was unemployed and owed money to Michael David Carruth, a bail bondsman who had bailed him out of jail. Jackson testified that Carruth came to her house more than once to discuss with [Petitioner] the debt incurred when Carruth bailed him out of jail.

Nine-millimeter shell casings fired during a New Year's Eve celebration were gathered from Jackson's yard as evidence. It was later determined that these shell casings were fired from two 9mm weapons. A 9mm shell casing taken from Jackson's yard matched a 9mm shell casing taken from the Ratliffs's den. Two 9mm shell casings taken from the Ratliffs's bedroom matched one 9mm shell casing taken from the den and matched two 9mm shell casings taken from Jackson's yard.

During a search of Jackson's home, police found $4,800.00 in cash that she said [Petitioner] had given her around the time of the Ratliffs's deaths.

(*Doc. No. 9, Exh. 4, pgs. 2-3.*)

-3-

## II.  DISCUSSION

### A. The Trial Court Erred in Denying Petitioner's Motion to Suppress His Statements

Prior to trial, the trial court conducted a hearing on Petitioner's motion to suppress statements he made during a custodial interrogation. At the hearing, the trial judge heard the testimony of the law enforcement officials who interviewed Petitioner and Petitioner himself. The trial judge also watched the videotape of Petitioner's interrogation while following along with the court reporter's transcript of the interrogation.  Following the hearing on the motion to suppress, the trial court concluded that Petitioner's statements to police were voluntary and, therefore, denied Petitioner's motion to suppress statements he made to law enforcement officials during the custodial interrogation. (*See Doc. No. 9, Exh. 13, pgs. 28-29.*)

In the instant habeas petition, Petitioner argues that the failure to suppress his statements was error because his confession to law enforcement officials was involuntary where the interrogating officers continued to question him despite his unequivocal request for counsel in violation of  *Miranda v. Arizona*, 384 U.S. 436 (1966). According to Petitioner, he repeatedly expressed a desire for the assistance of an attorney after he signed the *Miranda* waiver, and his statement to law enforcement should, he claims, have been excluded because the police did not cease questioning him when he made a valid, unequivocal assertion of his right to counsel.

The court understands Petitioner to present two claims which arise from the same factual core. First, Petitioner maintains that his requests for counsel during a custodial interrogation were unequivocal and statements he made after such requests should have been

suppressed. Second, the court understands Petitioner to claim that law enforcement officials' failure to discontinue the interrogation after he requested counsel made his subsequent confession involuntary.  (*Doc. No 1*.)  With respect to these claims, which were adjudicated by the state courts, Petitioner's request for federal relief is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act. *Price v. Vincent*, 538 U.S. 634 ( 2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."); *Williams v. Taylor*, 529 U.S. 362, 402 (2000).

### i. The Right to Counsel

To prevail on his § 2254 claim adjudicated on the merits by the state courts, Petitioner must show that a decision by the Alabama state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1) & (2);[2] *see  Williams*, 529 U.S. at 412-13.  A state court's decision can be "contrary to" federal law

---

[2]28 U.S.C. § 2254(d) provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(1)      resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or

(2)      resulted in a decision based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceedings.

either (1) if it fails to apply the correct controlling authority, or (2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Id*. at 405-06. A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Id*. at 407. "Federal habeas relief is available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'" *Parker v. Head*, 244 F.3d 831 (11th Cir. 2001) (*citing Williams*, 529 U.S. at 409). It is the objective reasonableness, not the correctness *per se*, of the state court decision that this court must decide. *See Williams*, 529 U.S. at 411; *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001).

Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A responsible, thoughtful decision that is made after a full opportunity to litigate suffices, "even if it is wrong." *Lindh v. Murphy*, 96 F.3d 856, 876-77 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320 (1997). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "However, the statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed

-6-

determinations of law and fact." *Parker*, 244 F.3d at 835 (*citing McBride v. Sharpe*, 25 F.3d 962, 971 (11th Cir. 1994)). However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)." *Price*, 538 U.S. at 639. The Supreme Court admonishes that such evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d). . . ." *Id*. at 636. Additionally, a state court's summary rejection of a federal constitutional issue qualifies as an adjudication on the merits under § 2254(d) so that the summary rejection is entitled to the same deference as a written opinion. *See Wright v. Sec. of Dept. Of Corr.,* 278 F.3d 1245, 1254 (11th Cir. 2002).

The record reflects that the state court adjudicated Petitioner's claim regarding the trial court's failure to suppress the statement he made to law enforcement officials despite Petitioner's contention that he made repeated requests for an attorney during a custodial interrogation. On direct appeal, the Alabama Court of Criminal Appeals concluded that the trial court did not err in denying Petitioner's motion to suppress his statement to police where he did not make an unequivocal request to speak to an attorney. As explained by the appellate court, in addressing Petitioner's request for relief it "first had to determine what [Petitioner] actually said in certain portions of the videotaped statement."[3] (*Doc. No. 9, Exh. 4, pg. 4.*)

---

[3] At the suppression hearing, trial counsel argued that there were a couple of discrepancies on the videotape with respect to some statements Petitioner made concerning talking to a lawyer. The State had a copy of the transcript of the statement prepared by an official court reporter. Trial counsel prepared a transcript by listening to the videotape and transcribing it. Other than certain "critical areas" as identified by trial counsel in their brief in support of Petitioner's motion to suppress, trial counsel indicated they had no objections with regard to the rest of the transcript. (*Doc. No. 9, Exh. 11 at 5-9.*) As noted by one of the
(continued...)

Petitioner argued on appeal that he made four statements requesting an attorney. The language that Petitioner maintains he used differs from the court reporter's transcription. The appellate court's opinion set forth Petitioner's versions of the disputed statements as found in his brief in support of his motion to suppress (with the disputed portions underlined), followed by the State's version of the disputed statements as they appear in the court reporter's transcription of the videotape of Petitioner's statement to law enforcement officials:

GARY'S VERSION

"Gary: That's it you know what I'm saying.  If you know what I'm saying, you saying you gonna put something like that on me then I want to talk to my lawyer then and it's, just that cause it ain't me bro.

(CR. 192, Brief in Support of Defendant's Motion to Suppress.)

STATE'S VERSION:

"Gary: That's it.  Do you know what I'm saying, if you know what I'm saying, you saying, you going to put something like that on me, then you might as well talk to my lawyer then, and it's just that because it ain't me, bro.

(R. 484-85, law enforcement transcription, and R. 944, Transcript of Suppression Hearing.)

The second statement in which language is disputed is as follows:

---

[3](...continued)

prosecutors at the suppression hearing, "[t]he way the [interview] room is set up the actual camera and microphone are in a thermostat within this room, and that thermostat is on the far wall from the Defendant. So his conversations, although pretty well clear are more difficult to hear than the interviewer who is closer to the camera." (*Doc. No. 9, Exh. 11, pg. 6.*)

GARY'S VERSION

> "Jackson: Well you know I hate to see somebody make the decision to not to tell the truth, and that they suffer for the rest of their life and it's a big decision.  That's a big choice.

> "Gary: <u>I want to talk to my lawyer man cause I'm telling you I didn't do no shit like that man</u>.  That's on everything man. Everything. My children everything man. I ain't got shit to do with no shit like that.

(CR. 192, Brief in Support of Defendant's Motion to Suppress.)

STATE'S VERSION

> "Jackson: . . . That's a big choice.

> "Gary: <u>Man, you can talk to my lawyer, man</u>. Because I"m telling you I ain't got nothing to do with no shit like that, man.

(R. 485, law enforcement transcription, and R. 945, Transcript of Suppression Hearing.)

Two of the statements that [Petitioner] contends indicate he requested an attorney contain language not in dispute. Those statements are as follows:

> "Jackson: When you gonna have to face the music. What I'm telling you right now is that this thing is going to go the distance today.  It's going the, distance its over with and my only hope is that you are going to tell the truth.

> "Gary: <u>Well, only hope.  Y'all are saying y'all got me on this, I might as well stop talking now and y'all talk to my lawyer because I'm telling you, man, I ain't had no dealings with that man in no kind of way as far as he got me out on bond and worried the shit out of me about that money, man</u>.

(R. 484, law enforcement transcription language, and R. 944, Transcript of Suppression Hearing.)

The second statement whose language is not disputed but whose meaning is at issue is as follows:

> "Jackson: Well I'm telling you man. We been working on it and uh we were trying to provide you an opportunity to tell your side and uh that's why I wanted to talk to you, to give you that opportunity and uh you know if you want to continue to and these boys are putting everything on you and if you continue to not tell the truth about what happened then I want you to know exactly what your up against cause everybody is saying you did it. Other people out there that don't know you was saying you was with them and uh . . .
>
> "Gary: Uh, show me what you got to show me, other than that, talk to my lawyer.  I would like to see it, though."

(R. 488-89, law enforcement transcription, and R. 948, Transcript of Suppression Hearing.)

The record shows that the trial court viewed the videotaped statement. Pursuant to the ore tenus rule, it was up to the trial court to resolve the alleged discrepancies between what the parties said was the specific language used in the disputed statements.  Although the trial court did not specifically set out his findings of fact, for the reasons discussed below, the court had to have found that [Petitioner] said "y'all talk to my lawyer" instead of "I want to talk to my lawyer," as [Petitioner], in his motion to suppress, contended was actually said. Based on our review of the evidence, we cannot say that the trial court's determination was clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.

(*Doc. No. 9, Exh. 4, pgs. 4-6.*)

The Court of Criminal Appeals then noted that "[a]fter determining the specific language [Petitioner] used during his interrogation, the trial court had to determine whether [Petitioner] unequivocally requested a lawyer during questioning." After setting forth the applicable case law, including *United States v. Davis*, 512 U.S. 452, 458 (1994), regarding

-10-

the issue of whether a suspect under questioning has made an unequivocal request for an

attorney, the Alabama Court of Criminal Appeals concluded:

> In denying [Petitioner's] motion to suppress, the trial court determined that [Petitioner] did not unequivocally request an attorney during his questioning. As discussed above, the trial court obviously determined that [Petitioner] consistently told Investigator Jackson that "y'all" could talk with his attorney, as opposed to "I want to" talk with his attorney. In telling Jackson that Jackson could speak with [Petitioner's] lawyer, [Petitioner] did not make an unequivocal request to speak with an attorney.  The statement is capable of equally plausible, differing interpretation.

> Accordingly, we cannot say that the trial court erred in denying [Petitioner's] motion to suppress his statement to law enforcement on the ground that [Petitioner] had requested an attorney during his interrogation by law enforcement.

(*Doc. No. 9, Exh. 4, pgs. 8-9.*)

Before a criminal suspect may be subject to a "custodial interrogation," the suspect

must be warned of his right to remain silent, be warned that any statement  he makes may be

used as evidence against him, and be informed that he has a right to the presence of an

attorney, either retained or appointed. *Miranda*, 541 U.S. at 661.  The Constitution does not

mandate the giving of *Miranda* rights. Rather, they are a series of "procedural safeguards"

designed "to insure that the right against compulsory self-incrimination [is] protected."[4]

*Michigan v. Tucker*, 417 U.S. 433, 444 (1974).

Pursuant to the holding in *Miranda*, the prosecution is prohibited from using

statements obtained during a custodial interrogation unless the defendant was first warned

---

[4]The privilege against compulsory self-incrimination is, of course, of constitutional magnitude.  *See* U.S. Const. Amend. V ("No person . . . shall be compelled in any criminal prosecution to be a witness against himself[.]").

of his constitutional rights. *Id*. 384 U.S. at 478-79.  After a suspect makes a knowing and voluntary waiver of the *Miranda* rights, law enforcement officials may continue questioning unless and until the suspect clearly requests an attorney.  *Davis*, 512 U.S. at 461.  Once the suspect requests an attorney, law enforcement officials must cease questioning until an attorney is present. *Id*. at 459. "[T]he suspect[, however,] must unambiguously request counsel." *Id*.  Courts engage in an "objective inquiry" to determine whether the suspect has made "some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Id*. (internal quotation marks and citation omitted). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel," questioning of the suspect may proceed. *Id*.  While it is the State's burden at a suppression hearing to prove that the defendant understood his *Miranda* rights and the consequences of waiving them, for purposes of habeas review the burden shifts to Petitioner to prove – by a preponderance of the evidence – that his purported waiver of rights was ineffective.  *See Lindsey v. Smith,* 820 F.2d 1137, 1149 (11th Cir. 1987).

The court concludes that the Alabama Court of Criminal Appeals did not decide Petitioner's challenge to the admissibility of his statement "differently than [the Supreme] Court has [in a case based] on a set of materially indistinguishable facts" nor did the state court apply a rule that contradicts governing federal law." *Williams*, 529 U.S. at 412. Consequently, the state appellate court's rejection of this claim was not contrary to actual Supreme Court decisions.

This court must, therefore, determine whether the Alabama Court of Criminal Appeals' decision to reject the suppression claim was an unreasonable application of clearly established federal law.

> In determining whether the state court's decision is an unreasonable application of the law set out in [relevant] Supreme Court decisions, we need not decide whether we would have reached the same results as the state court if we had been deciding the issue in the first instance. Instead, we decide only whether the state court's decision of the issue is objectively unreasonable. *See Williams v. Taylor*, 529 U.S. 362, 411, 120 S. Ct. 1495, 1522, 146 L. Ed. 2d 389 (2000) ("Under § 2254 (d)(1)'s 'unreasonable application' clause, then a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."); *Brown v. Head*, 272 F.3d 1308, [1313] (11th Cir. 2001) ("It is the objective reasonableness not the correctness *per se* of the state court decision that we are to decide.").

*Wright*, 278 F.3d at 1256.

Petitioner argues that the trial court erroneously denied his motion to suppress his statements to law enforcement officials where, even under the State's interpretation of what was said during his videotaped statement, it was sufficiently clear that any reasonable officer would have interpreted his comments as a desire for the assistance of counsel. (*Doc. No. 1, pg. 13.*) Petitioner further argues that he repeatedly made clear, firm statements to Sergeant Jackson about wanting to talk to his lawyer, at which time the interrogation should have stopped. Petitioner contends, however, that the officer did not terminate the questioning, but rather initiated further conversation with him by telling him that he (Sgt. Jackson) wanted to show him something. (*Id., pgs. 14-15.*)

-13-

The Alabama Court of Criminal Appeals determined that Petitioner failed to meet his burden under applicable case law.  In so doing, the appellate court noted that the trial court resolved the alleged discrepancies between what the parties said was the specific language used in the disputed statements, and concluded that it must have done so by finding that Petitioner had not made an unequivocal request to have an attorney present during the custodial interrogation.  The appellate court found that the record evidence supported the trial court's decision to deny Petitioner's motion to suppress his statements where it obviously found that Petitioner consistently told law enforcement that *they* could talk with his attorney as opposed to Petitioner's saying that *he* wanted to talk to his attorney.  (*Doc. No. 9, Exh. 4, pgs. 6-9.*)  The appellate court determined that because the record supported the trial court's determination that Petitioner did not make an unequivocal request to speak to an attorney during police questioning, the trial court did not err by denying Petitioner's motion to suppress his statement made to law enforcement.  (*Id. pg. 9.*)

After reviewing the record, this court finds that Petitioner has not provided clear and convincing evidence to dispute the findings of the Alabama appellate court. Thus, the Alabama Court of Criminal Appeals' determination of the facts is presumed correct, pursuant to § 2254(e)(1). In light of that presumption, the court finds that the Alabama Court of Criminal Appeals' decision was not "based on an unreasonable determination of the facts...." 28 U.S.C. § 2254(d)(2), and this claim, therefore, does not warrant habeas relief.

### ii. Voluntariness of Statement

Petitioner maintains that his Fifth Amendment right against self-incrimination was

violated where the waiver of his *Miranda* rights, although voluntary at the time he made the waiver, became involuntary when, he claims, he made it sufficiently clear to law enforcement officials that he desired counsel during his custodial interrogation. (*Doc. No. 1, pg. 16.*) Under the Fifth Amendment, "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. As explained, *Miranda* prohibits the Government's use of statements stemming from the custodial interrogation of a criminal defendant unless the Government demonstrates that it used procedural safeguards to ensure that the privilege against self-incrimination remained intact. 384 U.S. at 444. In particular, a defendant may waive his right against self-incrimination only if he does so "voluntarily, knowingly and intelligently." *Id.* A defendant's waiver of his *Miranda* rights is voluntary, knowing and intelligent if "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and it was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine,* 475 U.S. 412, 421 (1986). Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. *Id.*

A written waiver "is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver." *North Carolina v. Butler,* 441 U.S. 369, 373 (1979). Additionally "[t]here is no requirement that an accused be continually reminded of his rights once he has intelligently waived them." *United States v. Barner,* 572

F.3d 1239, 1244 (11th Cir. 2009) (quotation omitted); *see also Moore v. Dugger,* 856 F.2d 129, 133-34 (11th Cir. 1988) (holding, in the habeas context, that the defendant's statements were admissible despite the fact they were not preceded by a repetition of the *Miranda* warnings, because he previously had received the *Miranda* warnings and understood these rights).

The record in this matter shows that on appeal Petitioner alleged that the trial court erred when it denied his motion to dismiss where his statement was induced by law enforcement officials' promise of a lighter sentence and their indication that he would receive the death penalty if he did not assist law enforcement by giving a statement. (*Doc. No. 9, Exhs. 2-4.*) The appellate court determined that the record reflected that Petitioner was read his *Miranda* rights, that no promise or threats were made, and that the videotaped statement showed that Petitioner signed the waiver of rights form with no hesitation. The Alabama appellate court further determined:

> In viewing the videotape in its entirety, and in considering the totality of the circumstances, we find that the evidence supports the trial court's finding that [Petitioner's] confession was given voluntarily. [Petitioner] was in jail for an unrelated offense at the time he was interrogated. The interrogation and statement, which took less than two hours to complete, took place in an interview room in which one could see sunlight through a window in the room.
>
> [Petitioner] said that he finished the eleventh grade and acknowledged that he understood the form he signed waiving his rights. He had been to court before – in fact, one of his co-defendants had been his bail bondsman for a previous arrest, before the Ratliffs's murders.
>
> Despite Lt. Taylor's "tough talk," the videotape shows that the interrogation was not coercive or threatening. [Petitioner] was not promised anything if he confessed, in fact, the investigators told [Petitioner] that he would have to be

-16-

> punished for bad conduct, even if he was honest and told his side of the story. Although [Petitioner] was told that a charge of capital murder against him could result in the death penalty, he was not threatened with the death penalty if he did not cooperate.

(*Doc. No. 9, Exh. 4, pgs. 9-12.*)

In sum, the Alabama Court of Criminal Appeals concluded that upon review of the "totality of the circumstances" surrounding Petitioner's videotaped statement, the evidence did not reflect that law enforcement officials caused his will to be overborne and that the evidence supported the trial court's determination that the Petitioner's statement was voluntary. (*Doc. No. 9, Exh. 4, pg. 12.*)  *See United States v. Mendoza-Cecelia*, 963 F.2d 1467 (11th Cir. 1992) (simply informing a suspect of realistic penalties and encouraging him to tell the truth does not render a confession involuntary); *Clanton v. Cooper*, 129 F.3d 1147, 1158 (10th Cir. 1997) (holding that a confession was voluntary despite the fact that an officer falsely told the defendant that physical evidence connected him to the crime).  Although Petitioner asserts that the initial waiver of his *Miranda* rights subsequently became involuntary based on his claim that he requested counsel during his custodial interrogation, the record does not support this claim, nor does the record reflect that Petitioner did not understand his *Miranda* rights or was pressured to relinquish them against his will.  Thus, Petitioner's bare assertion that the waiver of his *Miranda* rights became invalid during his interrogation lacks merit. Accordingly, the Alabama Court of Criminal Appeals' determination that Petitioner's statement was voluntary is neither "contrary to" nor an "unreasonable application" of clearly established federal law as determined by the Supreme

Court of the United States nor an unreasonable determination of the facts based on the evidence in the record. *Williams v. Taylor*, *supra.*

## III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by James Gary, Jr., be DENIED and DISMISSED with prejudice.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **April 27, 2010**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the

decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 13th day of April, 2010.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE